UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 APR 18  PM 2: 18

CLERK
BY_____
DEPUTY CLERK

MICHELLE M.,                                     )
                                                 )
            Plaintiff,                           )
                                                 )
    v.                                           )        Case No. 2:22-cv-00024
                                                 )
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )
            Defendant.                           )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE DECISION OF THE COMMISSIONER,
DENYING THE COMMISSIONER'S MOTION TO AFFIRM,
AND REMANDING FOR DEVELOPMENT OF THE RECORD**
(Docs. 8 & 9)

Plaintiff Michelle Morin is a claimant for Social Security Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 8.) The Commissioner moves to affirm. (Doc. 9.) The court took the pending motions under advisement on September 26, 2022.

After her application for SSI was denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Matthew Malfa found Plaintiff ineligible for benefits because Plaintiff had not been under a disability

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

within the meaning of the SSA from May 20, 2020 through the date of ALJ Malfa's decision. On appeal, Plaintiff challenges the ALJ's conclusion that she would not be off-task at work due to her anxiety and panic and contends that conclusion is not supported by substantial evidence.

Plaintiff is represented by Craig A. Jarvis, Esq. Special Assistant United States Attorney Molly Carter represents the Commissioner.

## I.     Procedural History.

Plaintiff filed her application for SSI on May 20, 2020, alleging disability beginning January 1, 2019 based on the following impairments: Stage Four endometriosis, polycystic ovary syndrome, degenerative disk disease in her lower spine, Barrett's Esophagus, hidradenitis suppurativa, bipolar I disorder, and anxiety and panic disorder. After her claim was denied, Plaintiff timely filed a request for a hearing, which was held before ALJ Malfa on May 13, 2021 via telephone. Plaintiff appeared and was represented by counsel. Both Plaintiff and Vocational Expert ("VE") Joseph Atkinson testified.

On May 26, 2021, ALJ Malfa issued an unfavorable decision, which Plaintiff administratively appealed. The Appeals Council denied review on December 7, 2021. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.    ALJ Malfa's May 26, 2021 Decision.

Plaintiff was twenty-six years old at the onset date of her alleged disability and twenty-eight years old as of the ALJ's decision. She has a twelfth-grade education and has not worked since December 31, 2018. Her past employment includes work as a housekeeper and a substitute teacher as a childcare center teacher's aide.

In order to receive SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a

"residual functional capacity" assessment, whether the claimant can
perform any of his or her past relevant work despite the impairment; and
(5) whether there are significant numbers of jobs in the national economy
that the claimant can perform given the claimant's residual functional
capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability

within the meaning of the Act, and bears the burden of proving his or her case at steps

one through four of the sequential five-step framework established in the SSA

regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation

marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to

show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150

(alterations in original) (internal quotation marks omitted).

At Step One, ALJ Malfa found Plaintiff had not engaged in substantial gainful

activity since May 20, 2020, the SSI application date. At Step Two, he concluded that

Plaintiff had the following severe impairments: endometriosis/pelvic adhesion disease,

obesity, and generalized anxiety disorder with panic. ALJ Malfa found Plaintiff's

Barrett's esophagus, hidradenitis suppurativa, lumbar back pain, and left ulnar

neuropathy had "only a minimal effect on the claimant's ability to perform

basic work activities" and therefore were non-severe impairments. (AR 13.)

At Step Three, ALJ Malfa concluded that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

Listings. The ALJ analyzed Plaintiff's impairments under Listings 6.00 and 9.00 and

considered "the combined effects of [Plaintiff's] obesity with the Listings noted above in

determining the claimant's impairment does not meet a Listing, pursuant to SSR 19-2p."

*Id.* He found that Plaintiff's medical records did not show evidence of weight loss,

neuropathy, or "other documented signs/symptoms" of genitourinary disorders, or

evidence of "an endocrine disorder with resulting effects that meet or medically equal the

criteria of any listing in other body symptoms." *Id.* The ALJ stated that Plaintiff's pelvic

symptoms had improved after her October 2020 surgery and that an "exam showed normal gait." *Id.*

With regard to Plaintiff's mental impairments, ALJ Malfa found that Plaintiff had no limitations in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. The ALJ concluded that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two marked or one extreme limitation. (AR 14.) He also found that the "paragraph C" criteria were not present. *Id.*

At Step Four, ALJ Malfa determined Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except with the ability to lift/carry and push/pull up to 20 pounds occasionally, 10 pounds frequently; sit for up to 6 hours, and stand/walk for up to 6 hours, in an 8-hour workday. She is able to perform simple, 1-3 step tasks at less than production rate pace (defined as no assembly line work); is able to occasionally interact with coworkers and supervisors, with no interaction with the general public; and have occasional simple changes in a routine work environment.

(AR 15.) Plaintiff's past work activity did not meet the criteria for past relevant work as defined in 20 CFR § 416.965 and when she filed her application for SSI, she was "a younger individual," with "at least a high school education[.]" (AR 21.) The ALJ further noted that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work[.]" *Id.*

Considering Plaintiff's age, education, work experience, and RFC, ALJ Malfa determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including mail clerk, marker II, and photocopying machine operator. As a result, ALJ Malfa concluded that Plaintiff was not disabled.

### III.    Conclusions of Law and Analysis.

### A.    Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

The court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (first alteration in original). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**B.** **Whether Substantial Evidence Supports the ALJ's Step Four Findings Regarding Plaintiff's Mental Impairments.**

Plaintiff contends that substantial evidence does not support ALJ Malfa's conclusion that she would not be off-task due to anxiety and panic symptoms because the ALJ dismisses with flawed reasoning two treatment providers' opinions and a consultative examiner's opinion that indicate more marked limitations in Plaintiff's ability to remain on task and complete a normal work week. The ALJ cited a normal mental status and Plaintiff's daily activities at home with her boyfriend and family as evidence that she could function equally well in the workplace.

**1.** **Whether the ALJ Erred in Evaluating the Medical Evidence.**

Plaintiff argues that ALJ Malfa failed to "do a comprehensive evaluation of supportability and consistency in choosing which medical opinions to follow." (Doc. 8 at 4.) She contends that the opinions of James Walsh, PMHNP, and Kristin Reifenrath, LICSW, which the ALJ found unpersuasive or less than fully persuasive, are more consistent with the record than the opinions of Ellen Atkins, PhD, and Eric Jenson, PhD. She notes that Kathryn Rickard, PsyD, whose opinions the ALJ found generally or partially persuasive, found that Plaintiff met the criteria for panic disorder and that her ability to engage in work-related activities appeared to be impacted by her emotional state. The ALJ sought no further opinions as to whether and how often Plaintiff would be off-task or absent from work. According to Plaintiff, the ALJ's focus on the opinions' consistency with her mental status exams and activities of daily living allegedly "completely miss[ed] the point" of the nature and limitations of her panic disorder, which prevents her from leaving home without support. *Id.* at 5.

"When making a determination of disability, an ALJ must consider all of the available evidence in the individual's case record, including the opinions of medical sources." *Karen S. v. Comm'r of Soc. Sec.*, 2020 WL 4670911, at *13 (D. Vt. Aug. 11, 2020). ALJs must articulate *how* they considered medical opinions and prior administrative findings, as well as *how persuasive* they found those records. 20 C.F.R. §§ 404.1520c(a)-(b). Federal regulations indicate that the ALJ "will not defer or give any

specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness in accordance with five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* § 404.1520c(c).

The factors of supportability and consistency "are the most important factors [an ALJ] consider[s]" when determining the persuasiveness of a medical opinion. *Id.* § 404.1520c(b)(2). An ALJ must therefore articulate how he or she considered the supportability and consistency of a medical opinion, and may, but need not, address the remaining three factors. *Id.* "[W]hen the record contains competing medical opinions, it is the role of the Commissioner to resolve such conflicts." *Diana C. v. Comm'r of Soc. Sec.*, 2022 WL 1912397, at *7 (S.D.N.Y. Apr. 11, 2022) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

On October 9, 2018, Plaintiff complained of difficulty breathing and anxiety in the course of a CT scan. (AR 287.) Approximately six months later, on March 1, 2019, she was prescribed medication for anxiety after experiencing severe anxiety and panic attacks arising out of a past episode of anaphylactic shock in response to medication. During subsequent medical appointments in April and May 2019, she reported continuing to experience anxiety-induced breathlessness and agitation that was severe at times and persisted for days. At the time, Plaintiff had not been taking her medication as prescribed because taking medication made her anxious.

In response to Plaintiff's reported increasing anxiety and panic attacks, her primary care provider referred her to Kristin A. Reifenrath, LICSW. On June 7, 2019, Ms. Reifenrath, conducted a Behavioral Health Assessment of Plaintiff, during which

Plaintiff reported that she had been having panic attacks every other day and feared having panic attacks when she had to leave her house. Ms. Reifenrath noted that Plaintiff's increased anxiety and panic attacks were related to her concerns regarding taking medication, and that Plaintiff was not working and reported "significant distress engaging in daily tasks." (AR 855.) Ms. Reifenrath diagnosed Plaintiff with "[g]eneralized anxiety disorder with panic attacks." *Id.* Plaintiff continued seeing Ms. Reifenrath on a biweekly basis.

On June 24, 2019, Plaintiff reported severe anxiety, daily panic, and frequent panic attacks. The following day, on June 25, 2019, Plaintiff called an ambulance after having heart palpitations and anxiety accompanied by hyperventilation and mild chest pain. She was diagnosed with a panic attack and prescribed hydroxyzine. On June 27, 2019, she complained that her worsened anxiety "ha[d] gotten so bad that [it] affects her sleep and driving." (AR 569.) Plaintiff was prescribed clonidine for anxiety and diphenhydramine and an EpiPen as needed for allergic reactions. James Walsh, PMHNP, reviewed Plaintiff's pharmacological treatment plan with her and encouraged her to take her clonidine as prescribed. (AR 566.) Throughout July 2019, Plaintiff reported that taking clonidine helped her anxiety, reduced her panic attacks, and decreased her "heart pounding." (AR 554, 558, 560.)

Beginning in August 2019, Plaintiff told Ms. Reifenrath and Nurse Walsh that she was experiencing an increase in panic attacks despite taking clonidine. On August 15, 2019, Plaintiff visited the emergency department for shortness of breath but did not report accompanying chest pain or anxiety.[2] Although Nurse Walsh had prescribed lithium to treat symptoms of bipolar disorder that may have contributed to Plaintiff's anxiety, she

---

[2] The ALJ's opinion reflects no determination of whether Plaintiff suffers from bipolar disorder. *See* Stedman's Med. Dictionary (2014), *available at* Westlaw 259770 (defining bipolar disorder as "an affective disorder characterized by the occurrence of alternating manic, hypomanic, or mixed episodes and with major depressive episodes. The DSM specifies the commonly observed patterns of bipolar I and bipolar II disorder and cyclothymia."). Although the court would not remand solely for this determination, in light of its remand, the ALJ should address this impairment which Plaintiff identified in her disability application but which the ALJ omitted from his finding of impairments without explanation.

did not begin taking it due to her anxiety about medication. (AR 527, 537.) From late September through October 2019, Plaintiff reported "decreased duration and intensity of panic episodes" and told Ms. Reifenrath that "she [was] working on 'confronting [her] anxiety.'" (AR 520, 529.)

On November 12, 2019, Plaintiff reported increased panic related to an issue with a neighbor. Notwithstanding this episode, she also reported that the duration and intensity of her panic episodes had decreased. Between November 2019 and February 2020, Plaintiff stated that she was still experiencing panic attacks and had canceled appointments due to her fear of driving far from home. Working with Ms. Reifenrath to address her driving anxiety, Plaintiff managed to drive without a panic attack on several occasions, although not on others. (AR 490.)

After the onset of the COVID-19 pandemic in March 2020, Plaintiff complained of a significant, sustained increase in anxiety and panic. She moved to a new apartment in May 2020, which increased her anxiety, although she reported no panic attacks. Due to a significant increase in driving-related anxiety, in June 2020 she became reliant upon family members to accompany her when she needed to drive.

On September 1, 2020, state agency consultant Whitney Patterson, APRN, performed a physical examination. She found Plaintiff's mood to be "appropriate" and noted that Plaintiff reported that she had a "good support system" and had been taking clonidine as prescribed but that she had had a panic attack the day before and was experiencing heightened stress and anxiety due to COVID-19. Nurse Patterson observed Plaintiff was morbidly obese; had jaw tenderness upon palpation, perhaps due to clenching from stress; exhibited lower abdominal discomfort upon palpation, likely due to endometriosis; lacked any "significant symmetrical soft tissue trigger points" indicative of fibromyalgia; had a mild hand tremor; likely had carpal tunnel syndrome in both hands; and had bilateral hallux valgus. (AR 654-55.)

On September 25, 2020, state agency consultant Dr. Rickard performed a psychological examination wherein she determined that Plaintiff "appeared to meet the criteria" for a panic disorder and that Plaintiff's "ability to engage in activities appeared

to be affected by her physical condition and emotional state." (AR 669.) She observed that Plaintiff's short and long-term memory appeared intact and that Plaintiff was able to concentrate and attend to tasks. *Id.* She found Plaintiff to be cooperative and comfortable with face-to-face social contact, and to display appropriate eye contact and affect, clear and organized thoughts, and a logical and normal speech pattern. (AR 668.) Dr. Rickard noted that although Plaintiff can do most activities of daily living, she "generally needs a ride" to go to appointments or do errands because she "associates panic with driving" and does not drive more than five miles away from her home. (AR 667-68.)

State agency mental health reviewers Ellen Atkins, PhD, and Eric Jensen, PhD, submitted assessments in October and December of 2020, respectively, finding that Plaintiff's severe mental impairments were anxiety and obsessive-compulsive disorders and depressive, bipolar, and related disorders. (AR 66, 75.) They found that Plaintiff had no limitations in understanding, remembering, or applying information or interacting with others and moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing herself. (AR 67, 76.) Noting that "[e]pisodic exacerbations in anxiety or mood issues can temporarily undermine cognitive efficiency[,]" they opined that Plaintiff "[c]an sustain [concentration, persistence, and pace] over two hours over typical work day/week for 3-4 step tasks." (AR 69, 78.) They further opined that Plaintiff may need rides from others due to panic while driving. *Id.* Dr. Atkins noted that Plaintiff "can travel, adapt to changes in work setting, avoid hazards, and set goals." (AR 69.) Neither Dr. Atkins nor Dr. Jensen specifically addressed how often Plaintiff would be off-task or absent if she entered the workforce. Both, however, recognized that she was likely to experience episodic exacerbations of her anxiety. (AR 69, 78.)

In October 2020, Plaintiff had a normal mental status exam and reported to Nurse Walsh that her anxiety was "manageable" with her current medications. (AR 801.) In November 2020, Plaintiff stated that she had not had any recent panic attacks and had not driven since having had a hysterectomy in October 2020. On December 1, 2020, she told Ms. Reifenrath that "she is aware of increased energy, feeling more hopeful, and less frequent panic attacks since surgery." (AR 794.) Thereafter, Plaintiff reported increased

anxiety, panic, and hopelessness between December 2020 and February 2021, despite appearing oriented, well-groomed, and cooperative with good insight and normal thoughts and judgment during her therapy appointments. (AR 789, 864, 866.) She drove her daughter to a dentist appointment in January 2021 and reported driving with others in February 2021.

Nurse Walsh submitted a mental medical source statement on January 22, 2021, in which he found Plaintiff had Generalized Anxiety Disorder, with panic attacks, and rule out Bipolar Disorder. (AR 840.) He recorded Plaintiff's symptoms as anxiety, panic, sleep issues, and difficulty concentrating, and noted that, in response to treatment, Plaintiff's symptoms had decreased in frequency, although they persisted. Nurse Walsh found that Plaintiff had marked limitations in interacting with others and in adapting and managing herself, and moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. He described Plaintiff's panic attacks and anxiety as "derail[ing] her ability to function" and likely to result in Plaintiff being off-task at least twenty percent of the time and absent from work four or more times per month. (AR 842-43.) Opining that Plaintiff was unable to cope with work stress, Nurse Walsh indicated that Plaintiff was able to handle routine, superficial, or incidental, but not regular, interactions with coworkers, supervisors, and the general public. (AR 843.) He noted that she rarely went into public without the support of friends or family.

On February 8, 2021, Ms. Reifenrath submitted a mental medical source statement, stating that she had treated Plaintiff every other week since June 7, 2019. She diagnosed Plaintiff with "Generalized Anxiety Disorder, with panic attacks," and "Bipolar Disorder, current episode mixed, without psychotic features." (AR 845.) She described Plaintiff's symptoms as including "[g]eneralized anxiety, rapid thoughts, tension and restlessness, emotional dysregulation," and "frequent severe panic attacks[,]" and she opined that Plaintiff's symptoms persisted and her treatment progress had been limited by her multiple other medical conditions. *Id.*

Ms. Reifenrath found that Plaintiff had marked limitations in adapting and managing herself, moderate limitations in concentrating, persisting and maintaining pace, mild limitations in interacting with others, and no limitations in understanding, remembering, or applying information. (AR 846.) She opined that Plaintiff's "pattern of panic and avoidance" interfered with her ability to adapt to changes in her environment and that Plaintiff was "likely to be absent from work some days each month" because of her panic attacks. (AR 843, 847-48.) Although Ms. Reifenrath was unsure of Plaintiff's ability to complete tasks in a "competitive work environment" and could not provide an estimated percentage of time per day that Plaintiff was likely to be off-task, she opined that the severity and frequency of Plaintiff's panic attacks would likely cause her to be off-task for "significant periods" of the workday, as Plaintiff required time to self-regulate ranging "from minutes to hours." *Id.* Ms. Reifenrath found that Plaintiff was able to handle regular, but not intense, interactions with coworkers, supervisors, and the general public, because "[i]ntense stress would increase frequency of panic, interfering with the patient's ability to self-regulate and impacting communication." (AR 848.)

At the May 13, 2021 hearing held before ALJ Malfa, Plaintiff testified that she had panic attacks "probably two to three times a day[,]" each typically lasting five to twenty minutes. (AR 45, 47.) She testified that the attacks can be triggered "if [she's] not feeling well that day or if [she] ha[s] to leave the house, and definitely if [she] ha[s] to get in the car and drive somewhere. But sometimes it can be just absolutely nothing." (AR 45.) Due to the panic attacks, she testified that she is unable to drive or leave the house alone and relies upon her boyfriend and mother to accompany her. (AR 40, 48.) When Plaintiff has a panic attack, she "can't focus on anything besides trying to bring that panic down" and tries to "remove [herself] from whatever situation [she's] in[.]" (AR 53.)

The ALJ determined that the opinion of Nurse Walsh, who met with Plaintiff on a monthly basis beginning in June 2019, was "not persuasive" because it was "inconsistent with the objective medical evidence and treatment notes," including Plaintiff's reported daily routine, the findings of other medical opinions, and Nurse Walsh's notes showing normal mental status. (AR 20-21.)

ALJ Malfa deemed Ms. Reifenrath's opinion "less than fully persuasive," noting that Ms. Reifenrath was not an "acceptable medical source" as defined in 20 C.F.R. § 416.902(a) and finding her opinion the Plaintiff had marked limitations in adapting and managing herself was inconsistent with the record and therefore not persuasive. (AR 20.) The ALJ pointed to Ms. Reifenrath's opinion that Plaintiff could handle regular interactions with others, her findings of normal mental status, and Plaintiff's self-reported daily activities as contradicting Ms. Reifenrath's opinion. He accepted Ms. Reifenrath's opinion regarding Plaintiff's other functional domains as being "generally consistent with the objective medical evidence and treatment notes, showing mostly mild to moderate anxiety symptoms, with normal mental status exams." *Id.*

Plaintiff argues that the ALJ's discussion of Ms. Reifenrath's and Nurse Walsh's opinions focuses too much on her activities of daily living at home and normal mental status exams, and erroneously attributes that same functional ability to the workplace. Because her symptoms are not constant and because she manages them by staying at home and leaving only with people she trusts, daily activities present an inaccurate indicia of how she would function in the workplace.

"While Plaintiff's ability to perform daily activities is not dispositive of her ability to perform at a job, it was a proper factor for the ALJ to consider." *Lori P. v. Comm'r of Soc. Sec.*, 2021 WL 1207456, at *6 (D. Vt. Mar. 31, 2021) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (holding that an ALJ "must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources") (internal quotation marks, alterations, and citation omitted)). The ALJ's consideration of Plaintiff's normal status exams was also appropriate. Although a claimant's "alert and cogent comportment during . . . appointment[s] with an established care provider is not inconsistent with severe psychiatric difficulty in other situations[,]" Plaintiff presented in no distress for emergency and specialized treatment and had normal mental status assessments with unfamiliar providers, including consultative examiner Dr. Rickard. *Jorge D. v. Berryhill*, 2020 WL 1482625, at *8 (D. Vt. Mar. 27, 2020) (observing that "it is possible for a

claimant to appear normal at a medical appointment while suffering from serious mental illness").

The ALJ found the opinion of consultative examiner Dr. Rickard only "partially persuasive" because her statement that Plaintiff's ability to engage in activities "appeared to be affected by her physical condition and emotional state" was "vague[.]" (AR 19) (internal quotation marks omitted).

"State agency physicians are qualified as experts in the evaluation of medical issues in disability claims, and their opinions may therefore constitute substantial evidence if they are consistent with the record as a whole." *Karen S. v. Comm'r of Soc. Sec.*, 2020 WL 4670911, at *13 (D. Vt. Aug. 11, 2020) (alteration adopted) (internal quotation marks omitted). In addition to recommending an adaptation to accommodate Plaintiff's driving anxiety, Dr. Atkins and Dr. Jensen found that Plaintiff experienced "[e]pisodic exacerbations in anxiety or mood issues [which] can temporarily undermine cognitive efficiency." (AR 69, 78.) The ALJ, however, failed to develop the record to determine whether and how often this would cause Plaintiff to miss work or whether it would result in her being off-task in a work environment. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). In addition, it appears he did not ask the VE to opine how this would affect Plaintiff's ability to work other than determining that the average employer's tolerance for work absences for either a full or partial day is generally no more than one unscheduled absence per month and an employer's tolerance for off-task behavior is not more than ten percent of the time or six minutes every hour. (AR 58.)

The ALJ's failure to develop the record was not harmless. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (reversing and remanding for further factfinding because "[t]he record [was] unclear as to the length of individual breaks [the plaintiff] would need, and it [was] unclear as to the availability of jobs that could accommodate whatever breaks he needed"); *see also Elizabeth P. v. Comm'r of Soc. Sec.*, 2022 WL 507367, at *13 (N.D.N.Y. Feb. 18, 2022) (remanding case where "the ALJ did not

appropriately review the severity of plaintiff's limitations in considering how they affect plaintiff's ability to remain on task or regularly attend work, nor did she reconcile the five opinions opining off-task limitations with one another"); *Harvey v. Comm'r of Soc. Sec.*, 2019 WL 1010449, at *3 (W.D.N.Y. Mar. 4, 2019) (remanding where plaintiff's treating physicians "*both* stated that Plaintiff would be out of work days per month, and off-task at least an hour each day, [but] the ALJ's decision makes no mention of these elements of both statements") (emphasis in original).

Because a determination of whether and how often Plaintiff would be off-task and absent is critical to the disability determination, a remand is required for further development of the record. *See Karen B. v. Comm'r of Soc. Sec.*, 2022 WL 1797210, at *5 (D. Vt. June 2, 2022) ("Because the court cannot determine whether the ALJ rejected evidence regarding time off task and absenteeism, it cannot conclude that the proper legal standards were followed. On this basis alone, a remand is required."); *Susan B. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 225, 240 (D. Vt. 2021) (order remand where the ALJ refused to accord controlling weight to "overwhelming evidence" that plaintiff would be absent and off-task in excess of limits VE testified would be tolerated by employer).

## C.     Whether the ALJ Erred in Evaluating Plaintiff's Subjective Complaints Regarding Her Mental Impairments.

Plaintiff asserts that the ALJ's determination that her "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence of record" (AR 17) does not account for all of the evidence in the record. Noting that she "is not in a condition of panic at all times" and "is not typically panicking" during medical appointments, Plaintiff points to hospital records showing "objective signs o[f] panic" on at least two occasions. (Doc. 8 at 9.) She contends that "the record does not reflect sustained improvement with treatment[,]" and that her performance of household and parenting responsibilities does not undermine her panic disorder allegations, because those activities are not done outside the home without the presence of a supportive figure. *Id.*

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question[.]" *Genier*, 606 F.3d at 49 (internal citations omitted). The ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.*

In reaching his decision, ALJ Malfa described Plaintiff's history of anxiety and panic and recognized that the record shows that her mental health symptoms have fluctuated over time. The ALJ's conclusion that Plaintiff's symptoms have at times improved with treatment is consistent with evidence in the record, including treatment notes from Nurse Walsh and Ms. Reifenrath that Plaintiff reported improvements in her symptoms after beginning to take medication. Although the medication did not resolve Plaintiff's symptoms entirely, she began reporting longer periods without panic attacks and an increased ability to manage her anxiety without attacks. The ALJ thus properly considered Plaintiff's response to medication in evaluating Plaintiff's subjective statements. *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (affirming ALJ's decision that claimant was not disabled in part because his "depression and anxiety were manageable with medication"); *Torres v. Colvin*, 2015 WL 1218705, at *9 (S.D.N.Y. Mar. 17, 2015) (observing that claimant's symptoms "waxed and waned in reaction to personal stressors, but . . . [claimant] showed substantial improvement overall and was stable with conservative treatment such as medication but not hospitalization") (citation and quotation marks omitted).

The ALJ did not, however, explain how Plaintiff's subjective complaints of panic and anxiety, response to and adherence to a medication regime, and avoidance of stressful activities such as driving and attending activities without support would translate to the workplace. An ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and brackets omitted). "Although a claimant's daily activities are relevant . . . daily activities at home, on [a claimant's] own schedule—not in the context

of a competitive work environment where [she] would not be able to take breaks or rest as needed" is "not necessarily a clear and convincing reason to discredit a [claimant's] testimony." *Hurley v. Colvin*, 2018 WL 1250020, at *4 (W.D.N.Y. Mar. 12, 2018) (internal quotation marks omitted). For this reason, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, [as] many home activities may not be easily transferable to a work environment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). As the Seventh Circuit explained:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons[,] . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

"It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (alterations adopted) (internal quotation marks omitted). "[A] district court will not 'second-guess' the ALJ's credibility finding 'where the ALJ identified specific record-based reasons for his ruling,' and where the ALJ's credibility finding is supported by substantial evidence." *Vecchio v. Comm'r of Soc. Sec.*, 2021 WL 8013772, at *12 (W.D.N.Y. Dec. 1, 2021) (quoting *Stanton*, 370 F. App'x at 234). Although ALJ Malfa identified specific and valid reasons for his conclusions regarding Plaintiff's subjective complaints, he did not address how her daily activities with their limitations would transfer to a workplace environment where Plaintiff could not seek family assistance and would be required to be present and on-task with the limited exceptions identified by the VE.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for an order reversing the decision of the Commissioner (Doc. 8) and DENIES the Commissioner's motion to affirm (Doc. 9). This case is REMANDED to the Commissioner to develop the record regarding Plaintiff's off-task time and absenteeism, whether she has bipolar disorder, and for a redetermination of her credibility based on the transferability of her daily activities to the workplace.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18ᵗʰ day of April, 2023.

Christina Reiss, District Judge
United States District Court